## STEVENSON v. SHALCROSS et al.

## SHALCROSS et al. v. STEVENSON.

(Circuit Court of Appeals, Third Circuit. March 22, 1913.)

No. 1,683.

1. PATENTS (§ 328*)—VALIDITY—DOOR FRAME.

The Stevenson patent, No. 817,199, for a door frame, the distinctive feature of which is an angle-iron brace connecting the lower ends of the side jambs, to be imbedded in a concrete floor, is void for lack of patentable invention.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DOOR MECHANISM FOR COLD STORAGE ROOM.

The Stevenson patent, No. 812,377, for door frames and mechanism for air-tight compartments, consisting of devices relating to the doors and shutters of cold storage rooms having an overhead trolley to carry the load in and out of the room, held void for lack of invention as to claims 1, 2, 3, and 7, and not infringed as to claims 4 and 5.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Suit in equity for infringement by Samuel Price Stevenson against Jesse Shalcross and others. Decree for defendants as to one patent, and complainant appeals. Affirmed. Decree for complainant as to second patent, and defendants appeal. Reversed.

Henry N. Paul, Jr., and Jos. C. Fraley, both of Philadelphia, Pa., for complainant.

James L. Norris, Jr., of Washington, D. C. (John P. Croasdale, of Philadelphia, Pa., of counsel), for defendants.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLSTAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Stevenson, the grantee of two patents capable of conjoint use, charged the defendants Shalcross with infringement thereof. On final hearing the court held and decreed the first patent, viz., No. 817,199, granted April 10, 1906, for a door frame, void. Whereupon Stevenson appealed. It also held and decreed claims 4 and 5 of the second patent, No. 812,-377, granted February 13, 1906, "for improvements in door frames, doors, and adjunctive mechanism for air-tight compartments," valid and infringed, and that claims 1, 2, 3, and 7 were invalid. Whereupon the Shalcrosses appealed.

[1] Turning to the first patent, we note that it "has for its object the firm bracing of the lower ends of the door jambs and the providing for a substantial threshold to be formed integrally with the concrete floor." The means suggested for accomplishing this purpose consist of "a door frame having the jambs thereof connected to one another at their lower ends by one or more bars, preferably angle-irons, adapted to be imbedded in and covered by a concrete floor." Stated in simple terms, the disclosure, for which the patentee claims

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a monoply, was the bracing of the lower ends of door jambs by angle-iron. Does this involve patentable novelty, or was it one of those clever expedients which naturally follow the development and needs of the industry to which it pertains? The court below was of opinion the device lacked patentability, and we have reached the same conclusion. Sinking in the ground a transverse anchor block to keep a fence post in line, and of a ground sill to keep the sides of a gate frame true, are common expedients. Examples thereof may be seen in fence and gate patents. When it was desired to use a brace in concrete, there was no more patentable novelty in the conjoint use of concrete and steel than there was in other forms of construction work. Indeed, we think the language of the patentee himself in his testimony has very happily, if unconsciously, accorded his device its just measure, when, in giving an account of its origin, he said:

"Owing to puzzling difficulties arising when installing some doors of the same size and kind, in the same building, prior to that time, I decided to adopt this expedient of angle-irons connecting the lower ends to avoid those troubles, and the expedient was very satisfactory."

In other words, when the difficulty was appreciated, its solution was at hand in the shape of a very simple mechanical expedient.

[2] The other patent, No. 812,377, concerns storage chambers provided with a suspended rail on which a grooved wheel carrying the load for storage travels. For obvious mechanical reasons the horizontal swing of the door prevents the use of a slit in such door for the suspended track rail. It was therefore customary in the prior art to provide a small opening above the door in which the track was located and the grooved wheel ran. This opening was provided with a small door or shutter hung on hinges from the top and provided with a narrow slit for the track rail, and was adapted to swing out and up. These two doors were connected by a cord, which, without entering into details, it suffices to say so operated that when the large door was opened it pulled the small door open and up. As the tension on the cord was released by the closing of the large door, the small door dropped by gravity. Such devices were all shown in the Armour door, which the court found, and rightly so, antedated the patent. On this general form of construction the patentee sought, inter alia, to improve by the device embodied in the third claim, by "having the shutter project downwardly into the port, so that it is overlapped by the upper edge of the door." As to this obviously merely mechanical expedient, we agree with the court below that:

"The overlapping lip was so old and well known that no invention was required to employ it here."

His other device is thus described in the specification:

"This invention relates to doors for air-tight apartments, and more particularly to those used for cold storage apartments, and has for its object the facility of entrance and exit from such apartments with the least duration of opening of the door and the facility of introducing and removing objects by a trolley and suspended railway with a prompt opening and air-tight closing of the door and facility of adjusting the door frame to any imperfections in the form of the door."

The general means for carrying it out are disclosed as follows:

"To this end this invention consists in an improved construction of adjustable door frame and doors fitting thereto and to the suspended rail and positively connected means of opening said doors and closing them, as hereinafter described."

The means disclosed are described in the fourth claim as "actuating mechanism, substantially as set forth, operatively connecting said shutter with said door, whereby the shutter is positively opened and closed by the movement of the door in opening and closing," and in claim 5 as "a positive means of opening and closing said shutter from the motion of the door, and arranged to close shutter before closing the door and to open the door before opening the shutter." In other words, the device interposed between the door and the shutter so positively connected the two that "from start to finish of opening or closing the apartment, this intermediate mechanism alone controlled and actuated the shutter, and from its structure was constrained so to do by the movement of the door." In other words, the shutter made no move that was not caused by the intermediate mechanism, and the door exerted no control over the shutter save through such intermediate mechanism; or, to put it in another way, this mechanism interposed between the door and the shutter made of the two a composite unitary operative structure, operatively dominated by the opening or closing of the door.

This is stated in the specification, where, substituting names for letters, the patentee in effect says: The remaining part of the slot *26* is in a circumferential direction, so that the small door is only operated at such time relatively to the large door as to always close the small door before the upper part of the large door contacts with the lower end or lip of the small door and to move the large door clear of the small door before the latter commences to open. Comparing this advance, which we assume for present purposes involved invention with the prior Armour structure, it will be seen that each of the two, when the large door is opened, constrain the opening of the small door by, to use the phraseology of claim 4, an "actuating mechanism   *   *   * operatively connecting said shutter with said door, whereby the shutter is positively opened" by the movement of the door in opening. But here the resemblance ended, for when it came to closing the door the cord of the Armour device was not an actuating mechanism operatively connecting shutter and door, whereby the former is positively closed by the movement of the latter in closing.

It follows, therefore, that in providing an intermediate connecting mechanism of such a character that the motion of the large door, working through such intermediate mechanism, compelled the final and therefore the effective closure of the small door, the patentee disclosed the advance wherein the patentability of his device must lie. That such an advance involved invention, we will, for present purposes, assume; but it will be obvious that the field for advance in that regard was narrow, and the claims must be so construed as not to prevent other inventors from accomplishing final and effective closure by other means. And this, it strikes us, is what the defendant has

done. It is true that, in common with Armour and the patentee, he has a connecting mechanism, intermediate the door and shutter, of such character that when the door is opened the shutter opens perforce. But it is equally true that, when it comes to the final and effective closure of the shutter, such final closure is, just as in Armour, effected, not by the connecting mechanism, but by the direct engagement of the large door. Before this final, culminating act of closure, the defendants' intermediate machinery is no longer affected by the closing of the door. Physically and functionally, therefore, such actuating mechanism as the defendant employs is not, in the words of the claim:

"Actuating mechanism * * * operatively connecting said shutter with said door, whereby the shutter is positively closed by the movement of the door in closing."

We are not moved by anything appearing in this record to hold the court below made an undue use of discretion in refusing the withdrawal from issue of claims 1 and 2.

It therefore follows, from the views set forth in the foregoing opinion, that in so far as the decree below adjudged the two claims of patent No. 817,199, and claims 1, 2, 3, and 7 of patent No. 812,377, were invalid, the same must be affirmed, and in so far as the said decree held claims 4 and 5 of patent No. 812,377 were infringed, the decree must be reversed, and the case remanded, with directions to enter a decree dismissing the bill, with costs in this court and the court below.